case on our docket today is Chrysafis against Marks. Mr. Mastro. Thank you, your honors. Randy Mastro Gibson Dunning Crutcher, representing plaintiff's appellants, a small landlord suffering irreparable harm during this COVID period from New York's eviction moratorium, which has now been extended multiple times. Mr. Mastro, what did you just learn from the state's argument in the previous case? I learned many things from that argument, your honors. First, I learned that we have arguments raised by the state about mootness. But here, it's a fundamentally different case, because the state has already told us what it's going to do. Having brought this case under automatic bar, an eviction moratorium under a certain structure that prevented landlords barred the courthouse door to landlords. The Supreme Court intervened issued an emergency injunction, emergency writ, which is only granted in the cases of clearest constitutional violation of procedural due process in this case, and only in situations of exigency and substantial need. The court did that. The court directed an injunction of this entire legislative scheme, the entirety of SIFA Part A. And how did this... Mr. Mastro, let me, Judge Newman. Yes, sir. Before you get, as you were heading, obviously, into the merits of whether the new statute does or doesn't do something, I want to just try to get your view on the procedural posture of what's before us. Yes, your honor. The state says it's moot, and you say it doesn't. If it is, and there also, you want the state, the enforcement state, correct? Correct, your honor, because... I just want to understand your view procedurally. If the appeal is moot, in which event we would either dismiss it or remand for dismissal, would we have jurisdiction to issue a stay of enforcement? Your honor, the two are related issues. They're two halves of the same book, and it's not moot, because... That may be. I wasn't asking you at that point to say whether it's moot or not. My question is, if it is moot, if we decide it's moot, do we have jurisdiction to enjoin enforcement of the new law? Your honor, if you decided that it were moot, I wouldn't expect you to then issue an injunction. We would still be arguing and continue to argue in the district court, and this court, and the Supreme Court, that the injunction stands. I understand you say you wouldn't expect us to. I asked you, would we have jurisdiction to, or would it have to start anew in the district court where you would be free to seek injunctive relief? Your honor, I think that you have the jurisdiction to decide this motion because the Supreme Court, regardless of how you feel about mootness and whether we should have to go back to the district court to amend, which we think would be a waste given that this fundamentally the same statutory scheme. But if you felt there was a mootness issue on the original claims, but nevertheless, the Supreme Court has issued an injunction that says this entire CIFA Part A. Issued an injunction because of the fact that the tenant was able to certify her hardship, and the landlord was unable to contest it. That's the only part of the... In fact, they left the other statute in place, which also places... Well, let me finish, Mr. Mastro. You can shake your head all you want. It left in place the stay of evictions, the Safe Tenant Act. So, well, I can read what the court wrote, and my view of it is that that was the nature of what they found to be the clear constitutional defect. Now, if that constitutional defect is rectified, it renders the matter moot, then the question is, well, what about the rest of the statute? There's not a Supreme Court opinion on the rest of the statute. Your Honor, let me parse that out. And I was not shaking my head. I was acknowledging that Your Honor is making a point that I... Well, when you go like this, I don't take it to be yes, Mr. Mastro. I've known you a long time. I know, and the answer certainly isn't yes, Your Honor, for the following reasons. The Supreme Court said, first line of the opinion, that it literally is adjoining the Safe Harbor Act, CFA Part A. It's not adjoining the other Safe Harbor Act, because we never challenged that, Your Honor, because it's fundamentally different. The other statute is fundamentally different, because all it does is make it a defense. Get to the why, Mr. Mastro, which is what concerns us, the why. Why did they adjoin it? Adjoin it because then it could walk on. Understandably, you've got a great argument. A tannic wagon, I can't pay. And a landlord can't say anything. A landlord can't rebut that. And that's clearly an undue process. That's a walkover. So then the question becomes, is something different now, right? Correct. And I'm glad Your Honor came to that, because... Here we go. Now we're getting to the heart of it, okay? It's a distinction without a difference. It's illusory. They have, in name only, created a fiction of some potential challenge. I will explain. Why isn't Section 10 of the Act more than a fiction? For the following reasons, Your Honor. And one of our clients has explained exactly why. What the change, the supposed exception now, you still have. The Supreme Court said it, Judge it was troubled by the self-certification. Right. That self-certification continues. Proceedings are automatically stayed upon checking a box unsworn, no substantiation. Well, that was self-certification in the absence of a hearing. Now, this Act says you get a hearing. Isn't that different? Right. But Your Honor, Judge Newman, with all due respect, I don't get a hearing if I'm a landlord. I only get into court, automatically stayed upon the self-certification unsworn. I only get a hearing if I, let's remember the exact words, if I, the landlord, can swear under penalty of perjury that I have a good faith basis for saying that none of the hardships in the reason why this is insurmountable, the reason why one of my clients has sworn, I'd love to get into court. I may have my suspicions, but I don't know whether all of those many different types of hardships, I have no idea whether my tenant has any of those. Now you're on to, it seems to me, a related but a somewhat different point. And I'm not suggesting it's not a good point. It's just that it's different. It may be, as you suggest, that the landlord is put in a difficult position by having to swear under oath that something is not true when the landlord lacks, as you argue, an ability to know whether it's true or not. That's the point that you make, and I appreciate that point. I'm not saying I agree with it, but I understand it. But as to whether you get a hearing is your point that you are denied due process in that interval between when the declaration is filed and when you get the hearing, that that's a denial of due process? Or are you moving already to the point that you're not able, realistically, to challenge for all the reasons in your papers? You see the difference I'm putting to you? Of course, Your Honor. And the point is, we don't get from A to B, where the courthouse door gets reopened again, unless my client can swear under penalty of perjury. My client can't swear that, Your Honor. I'm just trying to isolate your argument so they don't all come out at once. That's why I say it's a fiction. I understand your point that you are not in a fair position to challenge it. I'm asking you, do you claim it's a denial of due process? If a stay issues from the moment the declaration is filed, until that hearing, even if the hearing is, as you say, defective, is that interval a denial of due process? Your Honor, there's there's two pieces to this. And I'm going to answer as to each. Okay, our, our clear procedural due process barrier infirmity here is the fact that my client is put in a position of having to swear under penalty of perjury. That's that the hearing is not adequate. That doesn't cover the time between the trial. Mr. Master, these things exist in the context of either the commencement of or the anticipated commencement of an eviction proceeding. In fact, several of your clients, Mr. Vicky Arias, I think one of the other clients had already commenced eviction proceedings. They actually got a warrant of eviction. And so the time period that Judge Newman's talking about is really the difference between when someone begins a proceeding, then papers start to get filed. It's the back and forth of that. But but let me let me ask you a substantive question. Because first of all, you say that they thought they swear under penalty of perjury. They could swear on information of belief, could they? Your Honor, they have to have a good faith belief. Okay, I understand that. But they could swear on information belief, right? And let me ask you about your client about Mr. Vicky, Vicky Arias. Is that his name? That is one of my clients. His dad, David says that he rented to someone who was a retired sheriff who had a pension of $4,700 a month. So he knew the he knew the monthly income of the of him, and that he ran a limo service that his annual income from the limo service was $200,000. So he had rather specific knowledge of his his tenants income, and actually regular monthly income. Did he not? In that one factor? Well, no, no, these are your plaintiffs. So I'm just asking you because you you told us now that this was an insurmountable burden. I want to ask you about this plaintiff. And and then there was a dispute about the rent. And they actually and and the arrears in the rent was $25,000. And they started an eviction proceeding and they sued them for the back rent and actually got a judgment for the back rent. And then they settled the matter in October of 2019. And the back rent was paid $25,000 was paid. And then they didn't pay December and January. And then they sued them again, and proceed and received a warrant eviction. So obviously, that plaintiff has a distinct knowledge of the ability of his tenant to pay. The New York State Employees Retirement System is a regular payer. And he's a member of the sheriff's retirement. So he's got $4,700 a month, he knows where to find it. And it's and it's and if he gets a judgment against them, that's servable. Mr. Ms. Cohen has been renting the apartment to her tenant for 25 years. 25 years. You think she has no idea as to what that individual's income is, or what is that she even she even appears that she knows that he's healthy. Well, she appears that he's healthy. Mr. Brandy LaChase says, says he doesn't appear to be suffering financially. Her client, her tenant doesn't seem to be suffering financially. Every single one of your affidavits reflects knowledge of the financial circumstances of their tenants. And in fact, one of them complains, Ms. She complains about the fact that these people are damaging their apartment, causing fires, clogging up the septic system. She clearly fits within the damage to property exceptions, almost as if the legislature wrote that additional exception to meet her concerns. So how is it that not that these four people can't raise the contest, the hardship contention and or then pursuant to Section 10, get themselves in front of magistrate and have a warrant of eviction obtained? How is that? How is that not going to happen? With these? Because Your Honor, the statute includes about eight different factors, any one of which can constitute a hardship sufficient to check the box. My clients have no idea what the hardship is that's being claimed because they check a box and any of those eight factors on the ability, the ability to pay and the only several of them know the health status of some of these people. And so it might well be that there are hardships, but that's what hearings are for. There'll be hearings on this, Your Honor. It's one thing to know whether somebody seems to have a job and a level of income. That's one of eight different factors under the statute. How am I client supposed to know whether it's been any significant increase in costs in the That's what hearings are for. If they have a good faith, excuse me, Mr. Mastro, if they have a good faith belief that they can pay. Look, if I had a tenant that had a $4,700 a month retirement plan, or benefit, and I knew that his rent was $4,700, and I'd settled with him, and he paid $2,500 or $25,000 in back rent, I think I'd have a clue that he's capable of paying that $4,700 a month. And how do I know, Your Honor, how do I know, Your Honor, that that particular tenant doesn't have himself or another family member, some, you know, compromising health condition? You don't. That's what a hearing is for. All you have to have is a good faith belief, Mr. Mastro. And you said, you said in your affidavit, excuse me, you said in your affidavit, that this statute was no different than the prior statute. And I would submit to you that it's graphically different, because it provides for a meaningful opportunity for every one of your clients to have a hearing. Your Honor, I respectfully disagree. And one of my clients has sworn. How about Ms. Shee? Yeah, Ms. Shee has sworn that she could not fill out an affidavit saying that there were swear under penalty of perjury, that none of the many different hardships in the statute, she has a good faith for believing exists. Executed in May, executed in May. And now she has the right to claim that there's substantial damage to her apartment, which is one of the conditions under which she's entitled to a warrant of eviction. Actually, Your Honor, it's the affidavit that she said the declaration she submitted in connection with our application, where she says I've gone through the factors in the statute. I don't know. My tenant doesn't even speak to me anymore. Change their number. I don't know what their current financial situation is. I don't know whether I can, they can claim any of the different types of all this. Excuse me, let me ask you. In the housing court, and you'll forgive me for not being intimately familiar with all your procedures there. I'm just a country lawyer from Connecticut. I don't hear of the housing court all that frequently, if ever. Once the tenant You missed a great opportunity. Once, once you file an eviction, and the tenant files a declaration, are you entitled to take the deposition of the tenant? Your Honor, we would be under the statute entitled for a court to decide that question in the first instance, if, if, if a landlord were able to swear under penalty of perjury that a good faith belief that no hardship condition exists. And then it would be up to the court whether to give us deposition hearing documents, whatever we would request. Are you saying you, you have no right to either send an interrogatory or take the deposition of a tenant prior to your obligation to file your good faith contesting of hardship? I did not say that, Your Honor. Okay, well, that's what I'm trying to understand. It's very unfair to put for the state to put you to the burden of having to swear under penalty of perjury, that the application is not made in good faith. That's your one of your arguments, right? Correct, Your Honor. Okay. And all I'm trying to understand is, do you have an opportunity before the hearing, but after the declaration to question the tenant either by deposition or interrogatory? It is not clear because this is a unique scheme, Your Honor. This is the hearing on hardship, where my client has already had to swear that there is no hardship. I understand. Once you get to the hearing, it may be too late. That's why I asked you, do you have an opportunity before the hearing? We would certainly request it, Your Honor, because this is a uniquely created hearing. It's not clear whether the hearing would happen automatically. In all the history of evictions proceeding in New York, nobody has ever tried to question a tenant. Oh, of course, Your Honor, of course. And of course, we would call the... That's all I'm asking you. Do you have an opportunity before the hearing to question the tenant? Yes. At such a hearing, we would call the tenant. No, you keep saying at the hearing. Please, let me put the question for the third time. After the declaration of the tenant, but before the hearing, do you have an opportunity to question the tenant either by deposition or interrogatory? Um, Your Honor, it's not clear because this is a unique procedural posture of you get a hearing on this, the sole question of hardship, whether in the normal course, you would get discovery first or not. But assuming you would get discovery, or at least at a hearing, you could question the tenant, you would get the opportunity to find out what the tenant circumstance was. What you keep saying at the hearing, the hearing only happens after you are obliged to file your good faith. So it doesn't answer my question to say you might get the opportunity at the hearing. When I keep asking you, do you have that opportunity before the hearing? Your Honor, the reason why I can't be more precise is because it's a procedure that hasn't occurred yet. It's a unique posture. The eviction proceeding is stayed. If my client puts in a declaration that swears there is no hardship, good faith belief as to no hardship, then my client is entitled to a hearing on that threshold four times and I'm trying to find out do you get to question them before that. And frankly, I will take your inability to deny that opportunity as saying it is at least an open possibility. Your Honor, it is at least an open possibility. I'm trying to answer your question honestly as I can. But if it is an open possibility, that may undercut your argument that you've been denied due process. Your Honor, the heart of our due process claim is that forcing my client who's not in possession of this information to have to swear to the negative. I understand that. And that's why I've asked you now a hundred times whether he can elicit the information before he has to swear. And you haven't denied that he has that opportunity. No, Your Honor, I do deny that. My client has to swear first. My client has to swear first to get to a hearing. No discovery before my client has to swear. Hold on a second. Go ahead, Judge Newman. I want to ask some questions too. When I finally pressed you on whether he can get a chance to interrogate the tenant before the hearing, you've either said it's a possibility or it's an open question. Or you say he can do it at the hearing, which of course isn't what I'm asking you. So I take it he may be able to interrogate before the hearing. Your Honor, there's two pieces to this. I'm really trying to answer your question. It's very simple. It's very simple. The declaration has filed. The landlord says, I don't know whether it's true or not. I'd like to find out by questioning him, not at a hearing, but at a, at a, what we call discovery. I'm sure you know the term. Can he get that discovery before the time when he has to, under penalty of perjury, dispute the declaration? Your Honor, my client has to swear in the declaration before he can enter court. This is some sort of whack-a-mole contest here. Hold on a second. Let's just wait one second. We're apparently not going to resolve or even close to resolve this question of procedural due process. But let me, let me ask some naive questions. We're talking about this litigation. It's obviously not simply to land in the housing court of New York, which probably adjudicates more cases in one year than the entire federal judiciary. But forget that. What is the problem here? What are you aiming for if you overcome this barrier that you find insurmountable? Where are we heading with this? But we, we aim, Your Honor, to have landlords eviction proceedings go forward. Tenants can raise a defense of hardship. They can do that under the Safe Harbor Act. That's not what we're challenging. What we're challenging is that landlords have to, eviction proceedings are going forward. There's no hardship. You are seeking the opportunity to pursue numerous, innumerable proceedings before the New York Housing Court. Is that what you're, that's the goal of your litigation? Yes, Your Honor. The housing court being at the level of the New York City Civil Court, am I right? Or it used to be? I have only knowledge. There is a housing court part, Your Honor. Yes. And you, yes, this is your goal in life. For these clients, you want to take each of them, sherry Adam through the housing court. Is there a substantive claim here of some kind as to the statute? I'm not sure I see one. I mean, do you do eventually? Is there a challenge to the statute? Well, the challenge to the statute, Your Honor, is that even as revised, it's a nice procedural due process, and that it's void for vagueness on what constitutes a hardship. As well as a First Amendment challenge that the landlords are being forced, compelled to make certain speech on the government's behalf, that is against the For example, assume for the argument, the proverbial small landlord who has not been paid under as a result of this, this legislation for one or two years. Is there a remedy for that, for that landlord to retrieve the funds due to the landlord at some point? Is that isn't that what you're seeking eventually? Your Honor, that's, that's only part of what one is seeking. It's, it's the fundamental right of the property owner to decide what to do with his or her property, whether to possess it, whether to exclude certain parties from using it. The property owner is eventually getting or trying to get back. Isn't there a more for him in the Safe Harbor Act to Your Honor, it's only a defense that then gets litigated in the case. It's not an automatic stay. It gets litigated before the eviction decision is made. Let me ask you something else, Mr. Mastro. But let me just ask one more question. But you have your clients have all proceedings are underway and are in court. Is that right? Yes, Your Honor, one of them are in court. Yes. If your landlord, any of them were to file the requisite dispute, that in good faith, they believe the hardship claim is invalid. Is there any realistic possibility that the conclusion of the eviction proceeding could happen before January 15 of next year? Actually, Your Honor, in the case of one of our clients, Brandi LaCasse, because of the Supreme Court's injunction, she was able to go back to court. And she obtained a default judgment. But now with the new law, she's going to find herself back to square one state and being able to pursue the eviction. Okay, let me try the question again. Because you did with all respect, you just didn't answer it. As to any of your clients, if they file the requisite dispute about the truth of the declaration, can they now face any possibility of a hearing and for the end of a hearing before January 15? Again, Your Honor, I think the answer to that is yes. In the case of one of our clients, he already has an eviction warrant that hasn't been executed yet. So if we can get back into court, that will mean that he will get that possibility. And as we saw in Ms. LaCasse's case, sometimes the tenants at that point, you know, do not contest or will waive a hearing. If you're asking me whether if you have to go to a hearing and litigate this issue first, I don't know how quickly the courts will work. It should take a period of months. But it's possible that you could have such a hearing, contested hearing before January 15. Absolutely. Well, it may be possible. But if it's not realistic, because it's a high volume court that has perhaps thousands of cases, then a stay until January 15 doesn't frighten me as much of a problem if the court is too clogged anyway. Well, Your Honor, the problem is the irreparable harm that the Supreme Court has recognized of these smaller landlords being denied the opportunity to advance their cases so the property they own, they have the right to control. I understand that. But you're saying what the Supreme Court apparently said was, it denies due process if there's no hearing. But if a court is so clogged, that it yes, it will grant hearings, but it's just got too much volume, then a stay until January 15. Sounds like a volume problem, not a constitutional problem. Well, Your Honor, it is a constitutional dimension, because however long it takes, is process denied to a property owner whose most fundamental right is the Supreme Court is recognized. You mean if the volume of that court is such that you can't get a hearing, let's say until next February, you get to evict them without that hearing? No, Your Honor, that's not what I said. But you are then if you well, you can't have it both ways, if you don't want to evict them without the hearing. But realistically, the hearing, because of the volume of the court can't happen until January 15. Then there doesn't seem to be a due process problem. Well, Your Honor, I have said to you that I can foresee circumstances where there could be hearings before January 15. And in the case of two of my clients, they could get one already got immediate relief because the courthouse door was opened again. And another has an eviction warrant waiting to be executed. So they can get relief now, with or without a further hearing. We are only in mid-September. It's four months. We have a hearing in four months. Mr. Mastro, perhaps you and this from the state, of course, perhaps the two of you can give us the benefit of a supplemental submission, which would give us some idea of what the caseload of the housing court in New York is like. It may or may not be relevant. So much of the conversation has involved that. I'm sure the two of you can look to the appropriate standard authorities of the judicial branch of the state and submit it to us for our record. Let's hear from Mr. Wu and we'll come back to Mr. Mastro. Mr. Wu. Thank you. May it please the court, Stephen Wu for the state. I want to respond to the arguments about mootness first, because I do agree with Judge Newman that mootness is foundational to all of the claims raised by the plaintiffs here, including their request for a stay against the new statute. The claims here are moot because the legislature directly responded both to the plaintiff's claims and to the Supreme Court's only criticism of the prior statute by creating a new hearing requirement that allows landlords to contest tenants' hardship declarations. The reason that is a fundamental change to the statute is that it puts in place a procedure that was entirely missing before, which was a basis for landlords to contest the tenant's declaration of hardship. And if they are successful at contesting that declaration to then have eviction proceedings go forward, even resulting in a judgment and an They say that opportunity is illusory, and you might as well deal with their claim, because they have to swear under penalty of perjury that the hardship claim is not valid. And apparently, they say we do not have a basis. We don't even know which category of hardship they are alleging. What do you say about that? So I have several responses to that. I think the threshold point is that it's just premature. It's not a claim in the abstract that you can make about a statute that it is either futile to go through the process or, practically speaking, unavailable. And at the moment, none of the plaintiffs, as far as we know, have even attempted to invoke the hearing. And so the argument that it is unavailable is just too early for them to make. But until they invoke it, isn't the eviction stayed? Well, but to get to the question directly, Judge Newman, it is not, in fact, the case that the process is illusory. You had asked earlier if there is an ability for landlords to obtain discovery. And there is. Under CPLR 408, landlords can request leave of court in a summary proceeding like this one to take discovery against the tenants. And until they ask for that process, it is And they can do it. They can do a pre-answer, can't they? That is correct. I think I believe it's requested by order to show cause. It's order to show cause by leave of the court is because an Article 7 proceeding, which is not just in the Housing Court of New York, but in actually in Justice Court in the town of Geneseo, is a special proceeding under the Real Property Actions and Precedings Law, Article 7. But by its nature, it's a special proceeding and you can do pre-answer discovery, can't you? That is correct. With leave of court and the argument that the tenant is resisting providing any information may be a basis for the court to grant that leave here, especially for this new procedure. Can I clear something up, Mr. Wu? The stay is of a warrant of eviction, is it not? Or is it the stay of the eviction proceeding? It depends on the stage of the proceeding. If a warrant of eviction has already been issued, the stay applies to the execution of the warrant. If the proceeding has just been commenced or it's pending, then it is a stay of the proceeding itself. Can I stop you as to that? What if I sued to evict somebody but sued them separately for the rent that they owed me in county court or a court of appropriate jurisdiction? Is the suit for the sum certain of rent due? Is that stayed? The money judgment can proceed. There is no restriction. So if somebody owes me $25,000, I can sue them for $25,000, get a judgment against them and begin enforcing it, can I not? That is correct. That is correct. This is a stay just of the eviction proceeding itself, the process of physically keeping them in the apartment or in the unit. And I think also on the argument about whether the process here is their tenants' factual circumstances. As I think Judge Wesley was pointing out, the plaintiffs here, when they filed this case, swore under penalty of perjury to a plethora of facts about these tenants, including specific information about their income, their family circumstances, the history of their relationship with these landlords. Now, again, I think what this shows is that you can't argue in the abstract that it's impossible to determine facts about these tenants. And more importantly, it is not on its face impossible to assert a good faith belief that some aspect of the tenants' hardship claim is unavailable. The purpose of the hearing is to allow the landlords to raise a good faith basis, to go to the hearing, and then to have the hearing itself resolve questions about whether, in fact, the tenants' hardship claim is valid. That's what the process was created to do until landlords attempt to invoke that process, arguing that a feudal, I think, is both premature and factually correct. Accepting for the argument your point that the hearing procedure is adequate, what are we to make of Chief Judge Mark's order of September 8th that says, with respect to pending eviction proceedings, they are stayed until January 15th of next year? Is that binding on all the housing court judges? I believe a later portion of that same order makes clear that that directive is subject to the hearing requirement. Which paragraph are you referring to when you say this? I apologize, Your Honor. I don't have it directly in front of me. I believe it's the second to the last page of the order refers to the Supreme Court's decision in this case, and describes the new procedure for landlords to request a hearing. And the reason that that is... Well, it may recognize there's a new statute, but it says pending residential eviction proceedings are stayed through January 15th. But again... That sounds pretty definitive. But again, that is a directive that is made conditional on the hearing process here. And it's reflecting Section 10 of the new statute, which appears on page 26 of the bill, which does say that a stay under this act shall be granted or continued unless the court finds the respondent's hardship claim to be invalid. So the way that the statute is drafted, I think, is that presumptively the stay will apply. But it recognizes that landlords can request the hearing, and that at that hearing, which is a continuation of the proceeding, if a court finds the claim to be invalid, then the eviction proceeding shall continue. Warrants of eviction can be executed. Basically, it goes forward at that point. So it's... It may be inartfully drafted, but the purpose of that administrative order is simply to reflect what the statute itself has described as the relevant... I'm not worried whether it's inartfully drafted. I'm worried that it means what it says. I think the best reading of that, is that in the absence of a request by the landlord for a hearing and a finding of invalidity of the hardship claim, that the stay under the new statute does apply. I think that is what Judge Marks is referring to. All right. So can you represent on behalf of the state that no matter how Judge Marks's order appears to be, that once... that as to every pending eviction proceeding, if the tenant files the hardship declaration and the landlord disputes it, there will be a hearing? Yes, that is... Can you represent that? Yes, that is how the statute... That hearing will occur in... and that hearing possibility, or certainty, as you say, happens regardless of paragraph one of Judge Marks's order? Correct. Once... if a landlord requests a hearing and files the affidavit or the attestation in attesting to a good faith belief, then the statute requires the court to hold a hearing. And that hearing can take place, I mean, regardless of what Judge Marks has said in the administrative order. The hearing is available for landlords at any stage of the eviction proceeding. All right. And what do you say about in the statute section... It's 6A2 in the statute, in any eviction proceeding, if the respondent files a hardship declaration, the execution will be stayed until January 15th. That's in the statute, not Judge Marks's order. And again, I think it is still subject to section 10, because... And let me... Well, wait a minute. Section 10 does begin, notwithstanding any provision of this act, but that's in 10A. It doesn't say the entire section 10 applies. And what you take it relying on is 10C, that says, after a hearing, if the claim is invalid, the proceeding shall continue. But 10A is the clause that says, notwithstanding any other provision. So 10C apparently is still subject to 6A2, is it not? That is not how we read it, Your Honor. Our understanding is that what the legislature intended under section 10, and by using the phrase, notwithstanding any other provision of this act, was to make the hearing process available for... You may be right, but you give us a somewhat unusual situation. You tell us the administrative judge's order should not be taken literally, and a section of the statute should not be taken literally, because you tell us there will not be an eviction stay, so long as a hearing is requested and held. Is that it? No, Your Honor. I think we are maybe disagreeing on how to read both Judge Marks's order and the statute itself, but I think... The statute does provide elsewhere that if the landlord makes assertions of damage to the property or makes assertions, a good faith assertion that the hardship doesn't occur, that it shall proceed, that the proceeding shall continue. Yes. So, I mean, there's inconsistency within this. There may be an inconsistency within the statute, but I have a hard time understanding how an administrative judge makes a substantive law decision for New York State trial judges, but it's not an administrative matter. But, Mr. Wu, the statute does indicate that in certain instances, the proceedings will continue, does it not? Yes, it does, including for the grounds on which you just articulated, including intentional damage to the property. And I do think, Judge Newman, your questions highlight sort of the oddity of raising these claims about the new statute in this procedural posture on an appeal from a complaint that makes no allegations about the new statute. And at a time before the New York courts have begun, in earnest, executing this statute, I think that if housing court starts entertaining these motions and starts granting these hearings, it'll become much clearer exactly how it'll be administered. And if there are ambiguities in the way that either the statute is written, or how the administrative order is drafted, that will get hashed out in the proceedings themselves. Let me read to you paragraph three of Judge Mark's order, the last full sentence. If the court finds a hardship claim invalid, the proceeding may continue in the normal course. Yes. What does may mean there? Does it mean it might, or does it mean is permitted to continue? And I asked that because elsewhere in the statute, the word shall is used. And his order doesn't say the proceeding shall continue. It says may. Does that mean is permitted to continue? Or what does it mean? Well, the statute does say shall. And in the 10c paragraph that you read, if they find the hardship claim invalid, the proceeding shall continue. And it's that language that is the positive one here. If Judge Mark's needs to revise the administrative order, I'm sure that he will do so. But it's not meant to be in derogation of the underlying statute. Let me follow your argument. I take it what you're saying is, there are some questions, but they ought to be sorted out in a new proceeding where the statute and the evictions under it are challenged in a new district court proceeding, not under in the appellate court under this statute, right? That is correct. For present purposes, if we if we go down that road with you and say, this is a new statute, the appeal is moved, start over in the district court. What happens with a eviction proceeding filed right away? Is it staying or not? So the eviction proceeding is subject to the statute and it is immediately stayed. But it is subject to the provision of section 10. Assuming the tenant files a hardship declaration, it is immediately stayed. But then it is subject to section 10, which says that if the landlord seeks a hearing on the hardship declaration, they will get that hearing and that the court's determination at the conclusion of that hearing will then dictate whether the proceeding continues or is further stayed. All right, let me ask you, I hope this will be my last question. I hope so too. When the Supreme Court issued their stay, as you know, they identified what they understood was a lack of procedural due process. But as I read their order, they did not say, we grant a stay only because of a lack of due process. They said we stay enforcement of the statute. In our court, the landlords are making both a First Amendment claim and a vagueness claim. They say those claims in here in the new statute and be where the language is carried over from the old statute, right? So are we to take the Supreme Court as having stayed the statute only because of a perceived due process violation or because they thought all of the claims had substantial probability of success? So I don't think there's a basis to infer the Supreme Court found that all the claims had a substantial probability of success. What we know from the Supreme Court stay order is that they stayed part A because they found a procedural defect in the absence of a hearing from that prior statute. And we have no indication that absent that defect, the court would have stayed the statute at all, or that it would have independently stayed the other provisions of part A. And in fact, in terms of reasonable inferences, plaintiffs had made and continue to make an inseverability argument saying that the hearing and the hardship declaration provisions were so central that the whole statute should fall regardless of the independent viability of the other. Do you know whether the application for a stay argued to the Supreme Court that was a probability of success on the other claims? It did ask for an argument, it did argue for all of the other claims, but the Supreme Court chose not to address the First Amendment issue at all, for example, and addressed only the procedural due process claim. But I do want to separately address that disclosure, the notice requirements here, because I think it's important to note that the plaintiffs here, for separate reasons, really neither have standing to challenge the new statute and their claims against the old statute are moved. As we pointed out in our supplemental briefs, the new statute's requirements here impose distinct notice requirements that are revised from part A, and they don't apply to any of these plaintiffs because those notice requirements only apply before the commencement of eviction proceedings, and every single one of them are in the middle of their eviction proceedings already. They don't have to send out any new notices under the new statute. And there are no longer any consequences, again, under the new notice requirements. They may request hearings under the new statute, regardless of whether they gave notice of hardship declarations. And if there is a finding of invalidity, their eviction proceedings may continue, again, without regard to whether they complied with past notice issues. So for these plaintiffs, the notice requirements under the new statute and the old statute are either inapplicable or have no consequence. And I think for that reason, they have no basis to challenge the new statute or to continue asserting their claims for the old statute's requirements. Thank you. Unless this court has further questions, we would ask you to either dismiss this appeal or remand for dismissal of plaintiff's claims. Thank you, Mr. Maestro. I'm going to take three minutes. Thank you, Your Honor. Coming back to Judge Newman's question, the Supreme Court, it was argued, all of those issues were argued to the Supreme Court. And the Supreme Court held that this order enjoins the enforcement of Part A of CIFA, the entirety of Part A. And it didn't just mention, this is a summary order, so it didn't go into every issue. The dissent actually attempted to rebut certain of those other issues too. But the court enjoined the entirety of Part A in the first sentence. And it went on to point out that it found the self-certification that triggered the stay to be a constitutional infirmity and that no one is the judge in their own case. Those were the quotes from the Supreme Court. But that the procedure under the Safe Harbor Act, a separate statute, which merely creates a defense, not self-certification and I think that it's not the way. I take the Supreme Court at its word. It enjoined the entirety of CIFA Part A. And that injunction should stand. And I would suggest that we just heard the self-certification still automatically stays the eviction proceeding. And then what happens next? If you're wrong, if you're, if we, if we disagree with you, say that the self-certification problem is resolved, you think there's still a due process problem in, in, in, in the fact that there's a stay for the non, for the hardship cases? I do still think there's a due process concern, Your Honor. And I think that, if there's no stay for the non-hardship cases, or for the situation of where someone's destroying the property, those are the two things that seem to be the statute added and allowed the landlord to, in good faith, to contest the hardship assertion. You still think that there's a due process concern? Your Honor, that exception for property damage did exist under the prior version of the statute, and what was presented to the Supreme Court, that it was modestly changed, but it was the same basic property damage. So that actually was part of what the Supreme Court had before it and found that too narrow an exception. And I would just say this, Your Honor. So what is it about what is it about the making a determination that the hardship exception doesn't apply, that violates due process? It's, we also have a void for vagueness argument, Your Honor, that the nature of what... But the Supreme Court said due process. I mean, the void for vagueness thing is really more in a criminal context. And the law will develop about what is a hardship and there's categories and the categories are already defined. I mean, this is a civil statute, right? This is not a criminal statute. So you don't have that kind of concern. Well, there are cases even in the civil side, where in civil enforcement and the like where void for vagueness is a problem, because when it is, you know, putting a party, the burden has shifted to us, the burden has shifted to my clients to have to swear that there is no hardship, and to request a hearing to prove there's no hardship. And the ambiguity, the vagueness... Who has to prove the hardship when there's... After there's an assertion, a good faith belief that there's no hardship, who has the burden of establishing it in the fact finder of the existence of a hardship? Your Honor, as I read the statutory scheme... I'm a county court judge in Livingston County, and somebody is going to be evicted. And somebody says, signs a hardship and the landlord says, there's no hardship, they're healthy, they're driving a new car. Who has the burden of walking in and proving the hardship? Your Honor, the way the statute is literally written is that I, the landlord, the tenant claims a hardship, doesn't have to say exactly what it is. Isn't the rule in New York, the party that pleads is the party that has the burden? Well, Your Honor, I only get to a hearing. If I swear it doesn't exist. I'm the one asking for the hearing. You don't want to answer about the rule? I think it has shifted the burden to me, Your Honor, to prove that there is no hardship, because the statute has pointed out... Not to ask a question, but your answer releases me from that hope. Are you really telling this court that at a hearing in the housing court, when the judge and after a declaration has been filed, and you have controverted it in good faith and under oath, and the judge asked you, as Judge Wesley just did, who has the burden of proof? You're going to stand up and say, Oh, I do, Your Honor, it's my burden. Is that what you're telling this court? Your Honor, what I'm telling this court is... No, please tell me, is that what you're going to say or not? Your Honor, I believe I have the burden, having requested the hearing, approving there's no hardship, because the statute automatically... You think you're going to tell that court the burden of proof, the risk of non-persuasion is on you. You're not going to... Is that what you're going to tell them? Really? Your Honor, I'm going to tell that court that I will prove there's no hardship, but it should, of course, of course, be on the tenant to defend the hardship. The statutory scheme doesn't set up that point. That's what you're going to say. So when you say to Judge Wesley, yes, the burden is on the landlord, you don't really mean that, because you're going to tell the state court the burden is on the tenant, as you've just said. Your Honor, the burden is put on my clients under the statutory scheme to have to swear before they can get any discovery. That's the burden of coming forward. That's not a burden of proof, and I think you know the try to respond in the following way. Rule 408 of the CPLR, it's in special proceedings. I don't get any discovery. My client doesn't get any discovery before they have to swear under oath, penalty of perjury, that there's no hardship. You've said that a hundred times. All you were asked is who had the burden of proof. I gave Judge Wesley one answer, and you gave me what I think is your correct answer, and I appreciate you're giving it. But Your Honor, under 408, my client is not entitled to discovery. 408, that's a different question. I asked you about burden of proof. I'm satisfied with your answer. Thank you very much. Let me handle some entirely ministerial clerical issues. We are going to reserve decision, obviously, but reserve decision on what? What are the questions that are before the court in your view, Mr. Mastroff? Whether what? What is the credo language that you, for example, would wish to have from us? Okay. Your Honor, in the first instance, and as soon as possible, we would appreciate a ruling from this court on our emergency motion and whether the Supreme Court's injunction applies to the new statutory scheme. To do what with respect to that new statutory scheme? Injunction applies to the new statutory scheme so that the landlords can return to court with their cases and have their cases proceed. Well, I'm still trying to understand exactly what that means as a practical matter. It's an emergency motion to apply the Supreme Court decision with what result? To do what? That the eviction moratorium under the latest extension would be enjoined so that landlords could proceed with their cases in court. So it's an emergency motion to stay in the eviction moratorium established by this most recent statute, whatever it may be called. Right? Yes, Your Honor. And what else? Is there not something else? Um, yes, Your Honor. We would like the court to rule that the case is not moot, that the statutes are the original extension sued under and the latest extension are sufficiently related that you should proceed to decide the merits. And that in deciding the merits consistent with the Supreme Court's opinion, um, you should find that both the extension originally challenged, um, and, uh, the latest extension, um, violated constitutional rights, procedural due process and the other constitutional rights. Let me understand this. So in your view, if we were to say, if we were to conclude that the case is not moot, you believe we are then authorized to proceed to deal with the merits of the First Amendment and due process claims? Uh, yes, Your Honor. All right. Do either of my colleagues have any questions or comments? Just of a procedural housekeeping sort? Let me also ask, because I asked before, uh, I'd like, uh, Mr. Wu, in particular, along with Mr. Mansour, to submit to us within two days a, um, statistical a compilation of the data regarding the workload of the housing court during the past three fiscal years. Last three fiscal years. I'm not suggesting that it's necessarily relevant, much less dispositive, but I think it may, might be instructive to us. Thank you very much. We'll reserve the decision on the emergency motion to enjoin the eviction moratorium established by this recent statute of the New York legislature and, uh, for a declaration that the case is not moot and that the court, this court, can proceed to deal with the merits set forth by Mr. Mansour. Thank you very much. Thank you. Thank you, Your Honor. Court is adjourned. Thank you, judges. Thank you. Thank you.